UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

JOSEPH J. BROWN,                          :
                                          :
        Plaintiff,                        :
                                          :
        v.                                :      File No. 1:09-CV-1
                                          :
CASTLETON STATE COLLEGE,                  :
                                          :
        Defendant.                        :

RULING ON DEFENDANT'S MOTIONS TO DISMISS
(Papers 4 and 9)

This case is before the Court on two motions to dismiss by
Defendant Castleton State College ("Castleton").  Plaintiff
Joseph J. Brown ("Brown") filed his original Complaint on January
5, 2009, and in response Castleton filed a Motion to Dismiss
(Paper 4).  Brown subsequently filed an Amended Complaint, and
Castleton filed a new Motion to Dismiss Amended Complaint (Paper
9).

I.   Background

In his Amended Complaint, Brown alleges that Castleton
discriminated against him based on his race and gender.  Brown's
factual allegations occur in two main groups.

First, Brown describes his time as a student in Castleton's
nursing program.  This period includes the 2003-2004 academic
year, as well as the fall semester of the 2004-2005 academic
year.  During this time, Brown alleges as a general matter that
he was treated differently from his peers based on his race

("Asian-Italian") and his sex (being male in a nursing program).
Paper 11 at 2-3. He also relates several particular incidents of
discrimination: two occasions of publicly being accused of
cheating, without an opportunity to "clear his reputation"; one
occasion of being marked down for "look[ing] dirty," when he was
in fact not dirty; one occasion of being dismissed for not
answering questions, while other students were not dismissed for
the same problem; and one occasion of being encouraged to leave
the program after performing poorly on an exam, where another
student with similar performance was not encouraged to leave the
program. Id. at 3-4. As a result of this discrimination, Brown
alleges, he withdrew from the nursing program sometime in the
fall of 2004. Id. at 4.

Second, Brown relates his experience pursuing a formal
grievance with Castleton after he withdrew from the nursing
program. According to the Amended Complaint, on January 14,
2006, Brown lodged a formal grievance against the nursing
department. Id. Castleton responded with an investigative
report on April 4, 2006 -- which appears to have concluded
unfavorably to Brown —- and Castleton's president accepted the
conclusions of the report on April 7, 2006. Id. at 4-5. Brown
alleges that "[t]he investigative report itself was biased and
discriminated against [Brown] by ignoring or discounting evidence

supporting [Brown's] claims and accepting without question the statements of personnel in the Nursing Department." Id.

Based on these facts, Brown asserts two legal claims. Count I alleges racial discrimination in violation of 42 U.S.C. § 1981, and Count II alleges gender-based discrimination in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681. Paper 11 at 5.

II. Standard of Review

Castleton has moved to dismiss Brown's Amended Complaint (as well as his original Complaint) under Fed. R. Civ. P. 12(b)(6), arguing that Brown fails to state a claim as a matter of law. This Court evaluates a motion to dismiss by treating all factual allegations in the complaint as true, Erickson v. Pardus, 551 U.S. 89, 93-94 (2007), and drawing any reasonable inferences that favor plaintiff from these factual allegations, Harris v. Mills, 572 F.3d 66, 71 (2d Cir. 2009).

Under Rule 8, a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court recently noted, however, that "[f]actual allegations must be enough to raise a right of relief above the speculative level," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007), making the plaintiff's claim "plausible on its face," id. at 570. "A claim has facial plausibility when the plaintiff pleads factual content

that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009). The plausibility standard does not require detailed facts establishing every element of the plaintiff's prima facie case, but it does require more than "'naked assertion[s].'" <u>Id.</u> (quoting <u>Twombly</u>, 550 U.S. at 557).

III. <u>Statutes of Limitations</u>

Castleton's main argument is that Brown's claims are barred by the relevant statutes of limitations. To the extent this is true, Brown cannot show "an entitlement to relief," <u>Twombly</u>, 550 U.S. at 557, and Brown's claims must be dismissed.

A. <u>The Applicable Statutes of Limitations</u>

Brown's § 1981 claim is subject to the four-year federal statute of limitations in 28 U.S.C. § 1658. This catch-all statute of limitations applies to any claim "arising under an Act of Congress enacted after [December 1, 1990]" that does not otherwise have a statute of limitations. 28 U.S.C. § 1658(a). Section 1981 does not have a statute of limitations, but whether § 1981 was enacted after December 1, 1990 is complicated. The original civil rights statute forming the basis of § 1981 was passed over a century ago,[1] but amended in 1991.[2] The Supreme

--------

[1] <u>See</u> Act of May 31, 1870, ch. 114, § 16, 16 Stat. 140, 144.

[2] <u>See</u> Civil Rights Act of 1991, Pub. L. No. 102-166, § 101, 105 Stat. 1071, 1071-72.

Court has considered this issue, and ruled that if a plaintiff's claim was "made possible by" post-1990 amendments to § 1981, the claim should be subject to the federal four-year statute of limitations.  Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369, 382 (2004).  Otherwise, the claim should borrow the relevant state's personal injury statute of limitations, as was the practice for § 1981 claims before 1990.  See Goodman v. Lukens Steel Co., 482 U.S.656, 660-62 (1987).

To determine whether Brown's claim was made possible by the 1991 amendments, the best starting point is the statutory text, reprinted below.  Subsection (a) dates from the original Reconstruction-era statute, whereas subsection (b) was added by the 1991 amendments.

> (a)  Statement of Equal Rights
> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.
>
> (b) "Make and Enforce Contracts" Defined
> For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

42 U.S.C. § 1981.  As one court noted, "'By its language, Section 1981 establishes four protected interests: (1) the right to make

and enforce contracts; (2) the right to sue, be parties, and give evidence; (3) the right to the full and equal benefit of the laws; and (4) the right to be subjected to like pains and punishments.'" Shaw v. Dillard's Inc., 17 F. App'x 908, 910 (10th Cir. 2001) (quoting Phelps v. Wichita Eagle-Beacon, 886 F.2d 1262, 1267 (10th Cir. 1989). Only the first of these protected interests was affected by the 1991 amendments.

Brown's complaint is not clear about which § 1981 right he seeks to vindicate, but from the factual context, the Court can infer it is the right to make and enforce contracts:  Brown's allegations deal with his enrollment at Castleton and the time he spent there, and he phrases his grievance in terms of being "deprived of the opportunity to complete the Nursing Program and become a nurse and [being] deprived of the funds borrowed and spent to enroll in the Nursing Program."  Paper 11 at 5.

Prior to the 1991 amendments, case law had established that the right to make and enforce contracts under § 1981 did not protect against racially discriminatory acts occurring after a contract was formed.  See Jones, 541 U.S. at 372-73; Patterson v. McLean Credit Union, 491 U.S. 164, 175-78 (1989).  Under this approach, Brown's claim would have been barred because his contract with Castleton presumably was formed at (or around) the time of his enrollment in the Nursing Program, whereas the alleged discrimination occurred later.

The 1991 amendments added subsection (b), which expanded the right to make and enforce contracts and included post-formation scenarios. This change makes Brown's claim possible, and therefore his claim "arises under" a law enacted post-1990. See Jones, 541 U.S. at 382. As a result, the four-year federal statute of limitations in 28 U.S.C. § 1658 applies. Id.

The statute of limitations for Brown's Title IX claim is easier to determine. Title IX was not amended post-1990, so the federal catch-all statute of limitations does not apply. See Curto v. Edmundson, 392 F.3d 502, 504 (2d Cir. 2004) (per curiam). Instead, the courts have the job of selecting the "'most appropriate or analogous state statute of limitations." Id. (quoting Goodman, 482 U.S. at 660). In Curto, the Second Circuit held that the relevant state statute of limitations for personal injuries should apply to Title IX claims. Id. Thus Vermont's three-year personal injury statute of limitations, codified at 12 Vt. Stat. Ann. tit. 12, § 512(4) (2009), applies to Brown's Title IX claim. Accord Walter v. Hamburg Cent. Sch. Dist., No. 04-CV-996S, 2007 WL 1480965, at *6-7 (W.D.N.Y. May 18, 2007) (unreported) (applying New York personal injury statute of limitations to Title IX claim).

B.   The 2003 and 2004 Incidents

Brown alleges various discriminatory events in 2003 and 2004, culminating in his withdrawal from Castleton's Nursing

7

Program in the fall of 2004.  Paper 11 at 2-4.  This case was
filed on January 5, 2009, over four years later.  As a general
matter, claims for discrimination accrue when the discriminatory
act takes place and the plaintiff has reason to know of it.[3]
See, e.g., Chardon v. Fernandez, 454 U.S. 6, 8 (1981) (per
curiam) (citing Del. State Coll. v. Ricks, 449 U.S. 250, 258
(1980)); Pauk v. Bd. of Trustees, 654 F.2d 856, 859 (2d Cir.
1981).  Viewing the 2003 and 2004 incidents in Brown's complaint
as separate episodes, each would have accrued as it occurred,
because Brown was present for all of the incidents and had reason
to know of them.  As a result, all of these incidents would be
time-barred.

> 1.  <u>Did filing an administrative grievance in 2006
> change the accrual date for the 2003 and 2004
> incidents?</u>

Federal case law is clear that filing an administrative
grievance does not, in itself, change the accrual date for prior
incidents of discrimination, even if the administrative grievance
seeks redress for those prior incidents of discrimination.  See

---

[3] Discrimination case law is based on several different
statutes —- largely Title VI, Title VII § 1983, § 1981, and Title
IX —- but as the Second Circuit has suggested, the general
principles for accrual are shared among all of them.  Pauk v. Bd.
of Trustees, 654 F.2d 856, 860 n.3 (2d Cir. 1981) ("[We] did not
suggest [in a prior case] that the federal rule for determining
when a particular type of claim accrues should vary according to
the federal statute under which it is brought.").  Moreover,
accrual is governed by federal law, even if the statute of
limitations is borrowed from state law.  See Connolly v. McCall,
245 F.3d 36, 41 (2d Cir. 2001) (per curiam).

<u>Ricks</u>, 449 U.S. at 260-61 (rejecting argument that discrimination claim accrued when administrative appeal failed); <u>Morse v. Univ. of Vt.</u>, 973 F.2d 122, 125 (2d Cir. 1992) ("The fact that . . . [plaintiff] undertook an internal administrative review of [the] allegedly discriminatory decision has no effect on when the statute of limitations period begins to run.") (<u>citing</u> <u>Ricks</u>, 449 U.S. at 261). So long as all the alleged incidents of discrimination are viewed as separate episodes (not a continuing violation, as discussed below), the administrative grievance process has no effect on the accrual of prior claims. Phrased differently, the complaint or appeal process does not re-incorporate the prior incidents about which one is complaining, and re-start their accrual dates. <u>Ricks</u>, 449 U.S. at 260-61; <u>Morse</u>, 973 F.2d at 125.

> 2. <u>Did filing an administrative grievance in 2006 toll the statute of limitations?</u>

According to Brown's Amended Complaint, his administrative grievance in 2006 was pending for almost three months. If the statute of limitations were tolled for this period, it could make events from late fall 2004 actionable by bringing them within the four-year statute of limitations applicable to Brown's § 1981 claim. Because neither party presses this point, the Court will examine tolling relatively briefly.

Unlike accrual, tolling principles are drawn from the same law used for the statute of limitations. <u>See</u> <u>Bd. of Regents v.</u>

9

Tomanio, 446 U.S. 478, 485 (1980) (noting that when a federal claim borrows a state statute of limitations, state tolling rules should also be applied).  Therefore Brown's § 1981 claim is subject to federal tolling rules, while his Title IX claim is controlled by Vermont tolling rules.

Federal case law generally holds that pending administrative appeals do not toll the statute of limitations.  In Ricks, the Supreme Court held that an EEOC appeal did not toll Title VII and § 1981 claims.  449 U.S. at 261 ("[T]he pendency of a grievance, or some other method of collateral review of an employment decision does not toll the running of the limitations periods." (citing Elec. Workers v. Robbins & Myers, Inc., 429 U.S. 229 (1976))).  Courts have held that administrative grievances do not toll statutes of limitations in other statutory contexts, as well.  See DeSalvo v. Metro. Opera Ass'n, Inc., 162 F.3d 1147 (2d Cir. 1998) (unpublished table decision) (finding no tolling for administrative grievance under the Age Discrimination in Employment Act); Morse, 973 F.2d at 125 (citing Ricks, 449 U.S. at 261) (similar holding under the Rehabilitation Act); Gardner v. Wansart, No. 05 Civ. 3351, 2006 WL 2742043, at *4 (S.D.N.Y. Sept. 26, 2006) (unreported) (similar holding under Americans with Disabilities Act).  A very few discrimination cases have found statutes of limitations tolled by administrative proceedings, but these tend to be in situations where the

10

plaintiff is required by statute to exhaust all remedies.  See,
e.g., Anderson v. Romano, No. 08 Civ. 559, 2009 WL 602965, at *4
(S.D.N.Y. Mar. 6, 2009).

Brown was not required to exhaust his administrative
remedies before bringing the § 1981 lawsuit.  See Johnson v. Ry.
Exp. Agency, Inc., 421 U.S. 454, 466 (1975) (noting that § 1981
claim can be filed as soon as it accrues).  Thus, the Court
concludes that the statute of limitations for Brown's § 1981
claim was not tolled by the three-month pendency of his
administrative grievance in spring 2006.

The answer for Brown's Title IX could be different because
the applicable statute of limitations is borrowed from Vermont
state law, and tolling would likely be analyzed under Vermont
law.  See Tomanio, 446 U.S. at 485.  The relevant statute of
limitations is only three years, however, so even if the
grievance process did toll the limitations period, claims based
on the events of late fall 2004 would remain time-barred.  Thus,
Brown's claims based on the 2003 and 2004 incidents cannot avoid
the statutes of limitations via tolling.[4]

---

[4] The above discussion addresses tolling due to
administrative appeals; the Court also notes that equitable
tolling would not help Brown, because his complaint does not
allege any "rare and exceptional circumstances" that prevented
him from timely filing.  Smith v. McGinnis, 208 F.3d 13, 17 (2d
Cir. 2000); see also Gallo v. Glen Cove Sch. Dist., No. 08-CV-
3582, 2009 WL 1161818, at *7 (E.D.N.Y. Apr. 29, 2009) (reviewing
equitable tolling).

3.   Can the 2003 and 2004 incidents be viewed as
     stemming from the same "continuing violation" as
     the alleged 2006 discrimination?

The continuing violation doctrine is an "exception to the normal knew-or-should-have-known accrual date." Harris v. City of New York, 186 F.3d 243, 248 (2d Cir. 1999). This doctrine developed in the context of Title VII claims, which are subject to particularly short filing deadlines. See 42 U.S.C. § 2000e-5(e)(1) (requiring plaintiff to file charge with EEOC within 180 or 300 days of the discriminatory incident). The purpose of the continuing violation doctrine is to allow plaintiffs to challenge an ongoing practice of discrimination, so long as at least one episode falls within the statute of limitations. See Fitzgerald v. Henderson, 251 F.3d 345, 359 (2d Cir. 2001).

Brown asserts Title IX and § 1981 claims, not Title VII claims, so a threshold question is whether the continuing violation doctrine applies to these types of claims. As for § 1981, some circuits allow the continuing violation doctrine, based on the broad purpose of remedying ongoing discrimination. See Oteri-Harkins v. City of New York, No. 97-CV-2309, 1998 WL 817689, at *5 (E.D.N.Y. Feb. 5, 1998) (unreported) (noting different approaches of the circuits). Other circuits do not allow it, citing the different statutory regimes of Title VII and § 1981. Id. In the Second Circuit, the matter is currently unresolved. Id. At least a few district courts have applied the

continuing violation doctrine to § 1981 claims.  See, e.g., id.;
Kim v. Dial Serv. Int'l, No. 96 Civ. 3327, 1997 WL 5902, at *5
(S.D.N.Y. Jan. 8, 1997) (unreported).  Other district courts have
criticized the continuing violation doctrine's use with § 1981
claims, however, and have avoided the issue.  See, e.g., Johnson
v. Nyack Hosp., 891 F. Supp. 155, 162 n.6 (S.D.N.Y. 1995).  The
Second Circuit itself has not spoken directly on the matter, but
a recent case suggests the continuing violation doctrine may
apply to § 1981 claims.  In Washington v. County of Rockland, 373
F.3d 310 (2d Cir. 2004), the Second Circuit noted in passing that
the continuing violation doctrine originated in Title VII law,
proceeded without comment to evaluate whether appellants' § 1981
claims fit the requirements of the continuing violation doctrine,
and concluded they did not.  Yet with no affirmative holding in
Washington, and the generally disfavored status of the continuing
violation doctrine, see, e.g., Falinski v. Kuntz, 38 F. Supp. 2d
250, 257 (S.D.N.Y. 1999), the law in this Circuit remains
unclear.

     Regarding Title IX and the continuing violation doctrine,
authority is even more sparse.  Two district courts in the Second
Circuit appear to have considered the issue.  Both noted the
absence of authority, noted the differences between the statutory
schemes of Title VII and Title IX, and without deciding the
issue, proceeded to apply the criteria for continuing violations

13

and conclude they were not met.  <u>See</u> <u>Walter</u>, 2007 WL 1480965, at

*7; <u>Folkes v. New York Coll. of Osteopathic Med.</u>, 214 F. Supp. 2d

273, 288-89 (E.D.N.Y. 2002).  Thus, it seems to be an open issue

whether the continuing violation doctrine applies to Title IX

claims.

This Court need not decide whether the continuing violation

doctrine applies to § 1981 and Title IX claims, because even if

the continuing violation doctrine does apply to § 1981 claims,

the facts of this case do not fit the doctrine.

Second Circuit precedent holds that a continuing violation

may be found in two situations.  The first is "'where there is

proof of specific ongoing discriminatory polices or practices.'"

<u>Quinn v. Green Tree Credit Corp.</u>, 159 F.3d 759, 766 (2d Cir.

1998) (quoting <u>Cornwell v. Robinson</u>, 23 F.3d 694, 704 (2d Cir.

1994)).  This prong is generally used with "pattern or practice"

discrimination claims, which "involve multiple incidents of

discrimination against individuals in a protected class arising

from a discriminatory policy or mechanism, such as a seniority

system or an employment test."[5]  <u>Walter</u>, 2007 WL 1480965, at *5.

At one point, Brown argues that his complaint "sets forth

_____

[5] Pattern and practice claims are often brought as class
actions, and some courts have questioned whether they can be
brought by individual plaintiffs.  <u>Walter</u>, 2007 WL 1480965, at
*5.  As noted above, even assuming individual plaintiffs can
bring pattern and practice claims, Brown fails to allege such a
claim.

allegations which constitute claims of ongoing discriminatory policies or practices," tracking the language of the first prong of the continuing violation doctrine. Paper 12 at 4. Yet he never follows up on this assertion, and the remainder of his argument focuses on the second type of continuing violation. <u>Id.</u> at 5-8. In addition, Brown's complaint does not contain the kind of factual allegations that would support a pattern and practice claim. His complaint alleges acts of discrimination in a variety of settings, but points to no "policy or mechanism" to tie them together. <u>Walter</u>, 2007 WL 1480965, at *5. Thus, Brown's complaint does not state a pattern and practice claim of discrimination, and fails to meet the first prong of the continuing violation doctrine.

The second type of continuing violation is "'where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice.'" <u>Quinn</u>, 159 F.3d at 766. The Supreme Court narrowed this prong of the doctrine in 2002, holding that claims of disparate treatment based on discrete employment events (like firings, failures to promote, denials of transfer, or refusals to hire) cannot be viewed as continuing violations, even if several of the events are related to each other. <u>Nat'l R.R. Passenger Corp. v. Morgan</u>, 536 U.S. 101, 110-15 (2002). Rather, each incident should be litigated as a

15

separate claim for discrimination or retaliation, which accrues when it occurs.  Id.  By contrast, the Supreme Court held that hostile work environment claims —- which are "based on the cumulative effect of individual acts" of intimidation, harassment, ridicule, and insult —- can still fit within the second prong of the continuing violation doctrine.  Id. at 115. Hostile work environment claims are timely so long as one "act contributing to the claim occurs within the filing period."  Id. at 117.

Brown's complaint does not specify the type of discrimination claim he is attempting to bring, based on the 2003-2004 events, but the facts suggest a hostile environment claim.  None of the acts of discrimination alleged by Brown involved adverse administrative decisions or academic outcomes, so it is difficult to view them as individual disparate treatment claims.  Rather, the main thrust of Brown's allegations is that he experienced harassment at Castleton, due to his race and gender, and eventually he withdrew from the program as a result. Under Morgan, this kind of hostile environment claim can invoke the second prong of the continuing violation, and the claim will be timely so long as at least one act contributing to the hostile environment falls within the filing period.

Yet Brown cannot show any act contributing to the hostile environment that falls within the filing period.  Brown contends

that the 2006 grievance process qualifies as part of the
continuing violation.  Paper 12 at 3-7.  It may be true that the
2006 grievance process was discriminatory, but this alleged
incident of discrimination is different in character from the
2003-2004 discrimination.  The 2003-2004 allegations describe a
situation where Brown was physically present at Castleton, in
ongoing contact with hostile faculty and administrators, and
forced to tolerate harassment in the course of his day-to-day
existence.  But once Brown withdrew from Castleton in fall 2004,
he was no longer exposed to this harassment.  The 2006 grievance
process, to the extent it was discriminatory, was a different
kind of harm entirely.  Brown does not allege that he was subject
to harassment during the grievance process, but rather that the
grievance process was biased and came to the wrong conclusion.
Specifically, Brown alleges that the investigators ignored
evidence supporting him, and favored the Castleton position, in
reaching their conclusion.  Paper 11 at 4-5.  These allegations
do not describe a hostile environment claim, but rather an
individual disparate treatment claim —- like an adverse
employment decision in the Title VII context.  The Supreme Court
in Morgan made clear that a discrimination claim based on such
facts is a "discrete" claim; therefore it does not count as an
act contributing to the wholly separate hostile environment
claim.  Morgan, 536 U.S. at 110-15; see also Fitzgerald, 251 F.3d

at 361-65 (distinguishing two types of discrimination suffered by plaintiff, and noting that they create two different claims).

So even if the continuing violation doctrine applies to Title IX and § 1981 claims, and even if Brown's 2003-2004 allegations constitute a hostile environment claim, the last "act[s] contributing to the claim" happened at or before the time of Brown's withdrawal in fall 2004. <u>Morgan</u>, 536 U.S. at 117. <u>See also</u> <u>Patterson v. Cty. of Oneida</u>, 375 F.3d 206, 220 (2d Cir. 2004) (finding no act contributing to the hostile environment occurred within the relevant statute of limitations). The 2006 grievance process, even if discriminatory in itself, was not an act contributing to the same hostile environment claim. Therefore any claim based on the 2003-2004 events accrued when Brown withdrew from Castleton in fall 2004, at the latest. This case was filed more than four years later, so all claims based on the 2003-2004 events are untimely, and are therefore dismissed.

C.   <u>The 2006 Grievance Process</u>

Brown alleges that Castleton discriminated against him in resolving his administrative grievance in spring 2006. Paper 11 at 4-5 ("The investigative report itself was biased and . . . ignor[ed] or discount[ed] evidence supporting [Brown's] claims and accept[ed] without question the statements of personnel in the Nursing Department."). As noted above, this claim is broadly similar to a Title VII discrimination claim, based on an adverse

18

employment decision like a failure to hire.  Viewed this way, the 2006 grievance process can be the basis for a discrete claim of discrimination —- separate from the 2003-2004 acts —- which accrued immediately.[6]

Castleton resolved Brown's grievance in spring 2006, less than three years before Brown filed this lawsuit.  As a result, any discrimination claim based solely on the 2006 grievance process is within the relevant statutes of limitations, and is not dismissed for timing reasons.[7]

---

[6] Brown is correct to distinguish his situation from those in Ricks and Morse.  In those cases, the plaintiffs filed administrative complaints but never alleged that the process of resolving the complaint was itself discriminatory.  Rather, the plaintiffs' grievances were based on prior events, and the administrative complaint process was simply a failed—but neutral—route to redress for those prior wrongs.  See Morse, 973 F.2d at 125;  Del. State Coll. v. Ricks, No. 77-342, 1978 WL 13838 (D. Del. Aug. 30, 1978) (district court) ("The fact is that plaintiff could have filed his charge of discrimination when the Board of Trustees denied him tenure and awarded him a terminal contract in the spring of 1974 and his case would have been no different then the one which was filed at any subsequent time."), rev'd, 605 F.2d 710 (3d Cir. 1979), rev'd, 449 U.S. 250 (1980).

[7] Castleton urges that Brown's allegations concerning the 2006 grievance process "should not be taken seriously," noting that "if [Brown] really believed that Castleton's investigation or decision regarding his internal complaint were discriminatory, he would have made allegations to that effect in his Original Complaint." Paper 9 at 2.  While Castleton may be right, this does not affect the claim's timeliness.  Castleton's concerns are better framed as a challenge to the sufficiency of the 2006 allegations, but even there, "'Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations.'"  Twombly, 550 U.S. at 556 (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

IV.  <u>Sufficiency of the Pleadings</u>

Next, Castleton attacks Brown's remaining timely claim, arguing that the complaint contains insufficient factual allegations about the 2006 grievance process to state a claim. Paper 9 at 10; Paper 13 at 9-10.

The Second Circuit has outlined the areas a complaint must cover, in order to state a claim under § 1981:

> To establish a claim under § 1981, a plaintiff must allege facts in support of the following elements:  (1) the plaintiff is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerned one or more of the activities enumerated in the statute (i.e., make and enforce contracts, sue and be sued, give evidence, etc.).

<u>Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.</u>, 7 F.3d 1085, 1087 (2d Cir. 1993) (per curiam).  Similarly, pleading a claim under Title IX requires allegations of discriminatory intent, <u>Yusuf v. Vassar Coll.</u>, 35 F.3d 709, 714-16 (2d Cir. 1994), although the first and third areas are not necessary.  In light of recent Supreme Court holdings, these pleading requirements should not be viewed as evidentiary standards, <u>see</u> <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506 (2002), but rather as a specific fleshing-out of the <u>Twombly</u> and <u>Iqbal</u> plausibility standard for Title IX and § 1981 claims.[8]

---

[8] The Second Circuit cases of <u>Yusuf</u> and <u>Mian</u> date from the mid-1990s, and some question arose after <u>Swierkiewicz</u> as to whether they remain good law.  <u>See</u> <u>Goldvekht v. United Fed. of Teachers</u>, No. 08-CV-1494, 2009 WL 129495 (E.D.N.Y. Jan. 20, 2009)

In terms of the first factor, Brown alleges that he is "of Asian-Italian descent," Paper 11 at 3, which probably suffices to show he is a member of a racial or ethnic minority. The third factor is also likely met, as Brown's complaint makes clear that the 2006 grievance process was part of Brown's relationship with Castleton as a student, a contractual relationship that falls within the § 1981 right to "make or enforce contracts."[9]

The second factor, discriminatory intent, is more difficult to find, based on the allegations in Brown's complaint. Brown describes the 2006 grievance process only briefly: in Paragraph 19, Brown alleges that he wrote a letter, initiating the formal

---

(holding that Swierkiewicz overruled Yusuf). Many district courts continued to cite Yusuf and Mian, however, even after Swierkiewicz, see, e.g., Bishop v. Toys "R" Us-NY, LLC, 414 F. Supp. 2d 385, 390-91 (S.D.N.Y. 2006), and Swierkiewicz itself has a questionable status after Twombly, see Aztec Energy Partners, Inc. v. Sensor Switch, Inc., 531 F. Supp. 2d 226, 228-29 (D. Conn., 2007), and especially after Iqbal. Thus, the best way to make sense of this case law is to read the Mian and Yusuf requirements for pleading a discrimination claim under Title IX and § 1981 as specific incarnations of the general Twombly / Iqbal plausibility standard—despite the fact that they predate Twombly and Iqbal by fifteen years.

[9] Some cases have held that the § 1981 right to enforce contracts ends when the contract is complete, raising the question of whether Brown's contract with Castleton had already been completed by 2006. See, e.g., Bishop, 414 F. Supp. 2d at 392. While the parties failed to address this issue, the Court notes that Brown's original enrollment contracts indeed terminated upon Brown's withdrawal from Castleton. Those contracts were never fully executed, however, and Brown's 2006 interaction with Castleton can plausibly be viewed as an effort to vindicate rights held under the earlier contracts, thereby satisfying the third factor from Mian.

complaint process, and in Paragraphs 20 and 21, Brown describes the outcome of that process. Paper 11 at 4-5. Specifically, Brown alleges that Castleton prepared an investigative report, and the investigative report "ignor[ed] or discount[ed] evidence supporting [Brown's] claims and accept[ed] without question the statements of personnel in the Nursing Department." Id. Like the plaintiff in Yusuf, Brown alleges sufficient facts to cast doubt on the administrative tribunal's outcome, but the facts do not plausibly suggest discriminatory intent. Yusuf, 35 F.3d at 715. That is, Brown alleges that Castleton ignored certain evidence and accepted other evidence unquestioningly, but there are many possible explanations for this, among them time constraints, laziness, or just that it was standard procedure to do so. See Iqbal, 129 S. Ct. at 1951-52 (noting non-discriminatory explanations for the facts alleged). Brown does claim that "[t]he investigative report itself was biased," and "[t]he investigative report is another instance of the discrimination against [Brown]," Paper 11 at 4-5, but these are naked assertions with no factual content, which this Court ignores per Iqbal. 129 S. Ct. at 1949-50.

Brown's best argument for discriminatory intent, based on the pleadings, would be to point to his earlier 2003-2004 allegations. As discussed above, those allegations are time-barred and cannot be the basis for a claim, but they may still be

used as "background evidence in support of a timely claim."
Morgan, 536 U.S. at 113.  Brown's descriptions of harassment by
Castleton faculty and staff in 2003-2004, read in the favorable
light of a motion to dismiss, do give rise to an inference that
the Nursing Program harbored racial and gender bias as a general
matter.  Yet Brown's complaint gives no reason why this general
bias in the Nursing Program extended to the investigators (who
presumably work for the entire college, not just the Nursing
Program), nor the college president.  To be plausible, Brown's
claim of discrimination during the 2006 grievance process would
need "particular circumstances suggesting that [racial or] gender
bias was a motivating factor behind the erroneous
[administrative] finding."  Yusuf, 35 F.3d at 715.  See also
Mian, 7 F.3d at 1088 (emphasizing the "requirement that the
alleged discrimination took place because of the individual's
race").  If Brown's allegations noted statements from the
decision-makers showing their bias, Yusuf, 35 F.3d at 715, or
noted other individuals who were treated differently by
Castleton's investigators and president, Brown v. City of
Oneonta, 221 F.3d 329, 339 (2d Cir. 2000), it would easily tip
his claim "across the line from conceivable to plausible."
Twombly, 550 U.S. at 570.  But Brown has alleged no such facts.[10]

---

[10] Brown argues in his favor that he "is not required to make
any allegations of 'how or why the investigators or President
David Wolk might have harbored discriminatory animus toward

23

Because Brown has alleged essentially no facts suggesting a discriminatory intent in the 2006 administrative grievance process, Brown's claim of discrimination is not "plausible" and is dismissed.

V.    Conclusion

For the above reasons, Brown's claims based on the 2003-2004 allegations are untimely, and his claims based on the 2006 grievance process are insufficient to state a claim. Accordingly, Castleton's Motion to Dismiss Amended Complaint (Paper 9) is GRANTED and all of Brown's claims are DISMISSED. Castleton's first motion to dismiss (Paper 4) is DENIED as moot.

---

him.'"  Paper 12 at 7.  This argument has superficial appeal, given the generous pleading regime established by Rule 8, and the Supreme Court's admonition in Swierkiewicz that complaints need not allege facts establishing a complete prima facie case.  But given the recent plausibility standard in Twombly and Iqbal, and the specific pleading requirements of Yusuf and Mian (which continued in use even post-Swierkiewicz), Brown is incorrect in asserting that no allegations of discriminatory intent are necessary.

Brown also states, "Proof of whether or why the investigators or President David Wolk harbored discriminatory animus toward [Brown] is not determinative of whether [Brown] was subjected to discriminatory policies or procedures or whether [Castleton], including its investigators and President David Wolk, permitted specific and related instances of discrimination to continue unremedied for so long as to amount to a discriminatory policy or practice."  Paper 12 at 7-8.  This sounds like a pattern and practice claim, but as noted in the discussion on timing, above, Brown has never pointed to any "discriminatory policy or mechanism, such as a seniority system or an employment test," that could form the basis of such a claim.  Walter, 2007 WL 1480965, at *5.  As such, Brown's "policy or practice" language is misplaced.

Dated at Brattleboro, in the District of Vermont, this 7th day of October, 2009.

/s/ J. Garvan Murtha
Honorable J. Garvan Murtha
Senior United States District Judge